IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-CV-281 |
| | : | |
| v. | : | |
| | : | JUDGE |
| $132,183.44 FROM PNC BANK, N.A. | : | |
| MONEY MARKET ACCOUNT NO. | : | |
| XXXX2353, HELD IN THE NAMES OF | : | **VERIFIED COMPLAINT FOR** |
| JERALYN R. DOUGHERTY AND CLINT | : | **FORFEITURE IN REM** |
| GREEN, | : | |
| | : | |
| Defendant 1, | : | |
| | : | |
| $1,019,076.76 FROM PNC BANK, N.A. | : | |
| MONEY MARKET ACCOUNT NO. | : | |
| XXXX9249, HELD IN THE NAMES OF | : | |
| JERALYN R. DOUGHERTY AND | : | |
| EDWIN J. DOUGHERTY, | : | |
| | : | |
| Defendant 2, | : | |
| | : | |
| $40,000.00 FROM PNC BANK, N.A. | : | |
| MONEY MARKET ACCOUNT NO. | : | |
| XXXX9206, HELD IN THE NAME OF | : | |
| JERALYN R. DOUGHERTY, | : | |
| | : | |
| Defendant 3, | : | |
| | : | |
| $800,000.00 FROM HUNTINGTON | : | |
| NATIONAL BANK MONEY MARKET | : | |
| ACCOUNT NO. XXXX5035, HELD IN | : | |
| THE NAME OF CLINT GREEN, | : | |
| | : | |
| Defendant 4, | : | |
| | : | |
| $644,526.18 FROM JP MORGAN CHASE | : | |
| BANK, N.A., SAVINGS ACCOUNT NO. | : | |
| XXXX9861, HELD IN THE NAME OF | : | |
| CLINT GREEN, | : | |
| | : | |
| Defendant 5, | : | |

**and**                                                    :
                                                           :
**$100,000.00 FROM PNC BANK, N.A.**                        :
**SAVINGS ACCOUNT NO. XXXX9214,**                          :
**HELD IN THE NAME OF JERALYN R.**                         :
**DOUGHERTY, FBO JAXSEN GREEN,**                           :
                                                           :
**Defendant 6.**                                           :
                                                           :

---

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendants in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1.     This is a civil action *in rem* brought to enforce 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture to the United States of:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property;

and/or 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture to the United States of:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

2.     The term "specified unlawful activity" means, in relevant part, any act or activity constituting an offense involving a Federal health care offense as provided by 18 U.S.C. § 1956(c)(7)(F) and/or any act constituting an offense under section 1957, relating to engaging in monetary transactions in property derived from specified unlawful activity, as set forth in 18 U.S.C. § 1961(1)(B) and incorporated by 18 U.S.C. § 1956(c)(7)(A).

## THE DEFENDANTS IN REM

3.      Defendant 1 is $132,183.44 from PNC Bank, N.A. Money Market Account No. xxxx2353, held in the names of Jeralyn R. Dougherty and Clint Green.   On or about October 31, 2017, the Internal Revenue Service ("IRS") seized Defendant 1 pursuant to a federal seizure warrant (Case No. 2:17-mj-631).   After seizing Defendant 1, it was deposited into the Treasury Suspense Account where it will remain during the pendency of this action.

4.      Defendant 2 is $1,019,076.76 from PNC Bank, N.A. Money Market Account No. xxxxx9249, held in the names of Jeralyn R. Dougherty and Edwin J. Dougherty.   On or about October 31, 2017, the IRS seized Defendant 2 pursuant to a federal seizure warrant (Case No. 2:17-mj-627).   After seizing Defendant 2, it was deposited into the Treasury Suspense Account where it will remain during the pendency of this action.

5.      Defendant 3 is $40,000.00 from PNC Bank, N.A. Money Market Account No. xxxx9206, held in the name of Jeralyn R. Dougherty.   On or about October 31, 2017, the IRS seized Defendant 3 pursuant to a federal seizure warrant (Case No. 2:17-mj-632).   After seizing Defendant 3, it was deposited into the Treasury Suspense Account where it will remain during the pendency of this action.

6.      Defendant 4 is $800,000.00 from Huntington National Bank Money Market Account No. xxxx5035, held in the name of Clint Green.   On or about October 31, 2017, the IRS seized Defendant 4 pursuant to a federal seizure warrant (Case No. 2:17-mj-628).   After seizing Defendant 4, it was deposited into the Treasury Suspense Account where it will remain during the pendency of this action.

7.      Defendant 5 is $644,526.18 from JP Morgan Chase Bank, N.A., Savings Account No. xxxx9861, held in the name of Clint Green.   On or about October 31, 2017, the IRS seized

Defendant 5 pursuant to a federal seizure warrant (Case No. 2:17-mj-630).    After seizing

Defendant 5, it was deposited into the Treasury Suspense Account where it will remain during the

pendency of this action.

8.      Defendant 6 is $100,000.00 from PNC Bank, N.A. Savings Account No. xxxx9214,

held in the name of Jeralyn R. Dougherty, FBO Jaxsen Green.   On or about October 31, 2017, the

IRS seized Defendant 6 pursuant to a federal seizure warrant (Case No. 2:17-mj-629).   After

seizing Defendant 6, it was deposited into the Treasury Suspense Account where it will remain

during the pendency of this action.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the

defendants under 18 U.S.C. § 981(a)(1)(A) and/or (C).    This Court has jurisdiction over an action

commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under

28 U.S.C. § 1355(a).

10.     This Court has *in rem* jurisdiction over the defendants under 28 U.S.C.

§ 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern

District of Ohio.

11.     Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and

omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28

U.S.C. § 1395 because the defendants were seized in the Southern District of Ohio.

## BASIS FOR FORFEITURE

12.     The defendants are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because

they constitute property involved in a transaction or an attempted transaction in violation of 18

U.S.C. § 1957 or are property traceable to such property.

4

13.    The defendants are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because they constitute or are derived from proceeds traceable to one or more offense constituting specified unlawful activity, said activities being violations of 18 U.S.C. § 1035 (false statements relating to health care matters) and/or 18 U.S.C. § 1347 (health care fraud) or a conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349.

## FACTS

14.    In mid-2017, IRS Criminal Investigations Special Agent Shawn Mincks ("SA Mincks"), along with agents from the United States Department of Health and Human Services and the Ohio Attorney General's Medicaid Fraud Control Unit, began investigating Tritan EMS, LLC ("Tritan"), Jeralyn Dougherty, and Clint Green for violations of 18 U.S.C. § 1035 (false statements relating to health care matters) and/or 18 U.S.C. § 1347 (health care fraud), which between at least 2013 and October 2017, resulted in fraudulent payments of at least $4,257,215.06 from Medicare and Medicaid to Tritan.

15.    Tritan operates in the Southern District of Ohio as a medical transportation company and is owned and operated by Jeralyn Dougherty and her son, Clint Green.  Jeralyn Dougherty and Clint Green are in control of the day-to-day operations of Tritan, including billing and financial responsibilities.

**A.    Background**

16.    A medical transportation company furnishes wheelchair van or ambulance services and meets the minimum standards set forth by the Centers for Medicare and Medicaid Services and the Ohio Administrative Code.   Tritan provides medical transportation services to recipients of Medicare, Medicaid, and other "health care benefit programs" (as that term is defined in 18 U.S.C. § 24(b)).

5

### i. Medicare

17.  Medicare is a federal health care program that provides basic medical coverage for persons age 65 and over who are entitled to Social Security benefits and for persons under age 65 who suffer from certain disabilities. Medicare is administered by the Centers for Medicare and Medicaid Services, an agency of the United States Department of Health and Human Services.

18.  Medicare is divided into two parts: Part A covers 100% of the allowed amount for necessary inpatient hospital care, and Part B covers 80% of the allowed amount of medically necessary physician services, outpatient services, transportation services, and other medical services.

19.  To participate in the Medicare Provider Program, a provider signs an agreement with the United States and agrees to accept the terms and regulations issued by Medicare and the United States. Providers also attest to their responsibility to comply with Federal and Medicare laws and regulations on a recurring basis. Upon acceptance into the Medicare Provider Program, the provider is issued a Medicare provider number through which the provider submits all claims for reimbursement for services.

20.  To request Medicare reimbursement for medical transportation services, providers such as Tritan use Health Insurance Claim Form (Form HCFA 1500). The form requires the provider to state the patient's diagnosis, date of service, procedure code, type of services provided, charges, name of and provider number for the entity providing the services, and a designation of the selected method of reimbursement. The form requires the provider to certify that the services on the form were "medically indicated and necessary for the health of the patient" and that the claimed services are true and accurate. The form further warns that any false claim, documents, or concealing of a material fact may be prosecuted.

21.     According to the Social Security Act, Section 1861(s)(7) [codified at 42 U.S.C. § 1395x(s)(7)], Medicare established coverage for "medical and other services" named in the statute, including "ambulance service where the use of other methods of transportation is contraindicated by the individual's condition, but . . . only to the extent provided in regulations." Although Medicare coverage includes payment for ambulance transportation, it does not include payments for transportation by other means, such as wheelchair vans or personal vehicles.

ii.     **Medicaid**

22.     Medicaid is a federal healthcare benefit program, under the Social Security Act [codified at 42 U.S.C. § 1396, *et seq.*], designed to provide medical services, equipment, and supplies to certain individuals and families with low income. The United States Department of Health and Human Services supplies approximately 60% of the funding for the Ohio Medicaid program. The Medicaid program is administered by the State of Ohio through the Ohio Department of Medicaid.

23.     As part of the federally approved state plan, the Ohio Department of Medicaid has elected to contract with Medicaid Managed Care Organizations ("MCOs"). MCOs are health insurance companies that provide coordinated healthcare to Medicaid recipients. The MCOs contract directly with healthcare providers, including hospitals, doctors, and other healthcare providers to coordinate care and provide the health care services for Medicaid recipients.

24.     Healthcare providers who contract with an MCO must enter into an agreement with the MCO in which the participating provider agrees to comply with all applicable state and federal statutes, regulations, and guidelines. Participating providers are assigned a unique provider identification number that must be used by the provider to be eligible to bill and receive reimbursement for services rendered to Medicaid recipients.

25.     As part of the Ohio Medicaid program, MCOs and the participating providers must furnish medical and health-related services pursuant to the state plan.  As administrator of the Ohio Medicaid program, the Ohio Department of Medicaid must track all services received by recipients, whether enrolled directly with the department or enrolled with a MCO.   Therefore, the MCO is required to submit encounter data to the Ohio Department of Medicaid that includes detailed records of the services a Medicaid recipient received from a participating provider.

26.     A participating Medicaid provider agrees to provide a service, submit the claim, and accept as payment in full the amount paid by the Ohio Medicaid program.   The provider signs a Medicaid participation agreement, which requires it to keep records necessary to disclose fully the services provided to Medicaid patients.   To receive Medicaid reimbursement for covered services, the provider electronically submits billing data to the Ohio Department of Medicaid, which then pays the provider by mail or an electronic transfer.

27.     Medicaid pays participating healthcare providers based on reasonable charges for covered services provided to beneficiaries.   Providers agree to know Medicaid reimbursement policies, which are communicated via regulations, manuals, and newsletters.   Medicaid providers also agree to bill only for services actually rendered that are medically necessary to diagnose and treat illness or injury and for which the provider maintains adequate documentation.

28.     Unlike Medicare, the Medicaid program includes payments for both ambulance transportation and wheelchair van transportation.

29.     Medicare and Medicaid are health care benefit programs as defined in 18 U.S.C. § 24(b).

**B.    The Investigation**

30.    During the course of the investigation, SA Mincks determined that Tritan operates in the Columbus, Ohio area and was established in or about March 2011.    As part of the investigation, billing and banking records related to Tritan and its owner/operators, Jeralyn Dougherty ("Dougherty") and her son, Clint Green ("Green"), were gathered and analyzed. Investigators determined the following.

31.    From January 1, 2013, through June 17, 2017, Tritan billed Medicare Part B for $17,437,652.15 and received payments of $5,080,426.03.    Bank records available for the period of January 1, 2013, through April 30, 2017, show during that time, Medicare paid Tritan no less than $4,747,556.45.

32.    The top procedure codes billed by Tritan to Medicare between January 1, 2012, and June 17, 2017, were:

    a.    A0428 (Ambulance Service, Basic Life Support, non-emergency): approximately $11.6 million billed; approximately $3.1 million paid;

    b.    A0425 (Ground mileage, per statute mile):   approximately $2.3 million billed; approximately $1.1 million paid; and

    c.    A0426 (Ambulance Service, Advanced Life Support, non-emergency - ALS1):   approximately $3.8 million billed; approximately $1 million paid.

33.    Further analysis of Medicare billing records revealed that Tritan did not bill for any wheelchair van transports during the entire period.   (Medicare does not reimburse for wheelchair van transports.)

34.    From January 1, 2012, through July 28, 2017, Tritan billed the Medicaid program approximately $15.3 million and received payment of approximately $1.25 million.    After reviewing the bank records available for the period of 2013 through April 2017, SA Mincks

conservatively estimates that Tritan was paid no less than $1 million from its Medicaid billing.

35.     The top procedure codes billed by Tritan to Medicaid between January 1, 2012, through July 28, 2017, were:

> a.     A0426 (Ambulance Service, Advanced Life Support, non-emergency - ALS1):   approximately $9.9 million billed; approximately $1 million paid;
>
> b.     A0425 (Ground mileage, per statute mile):   approximately $1.9 million billed; approximately $183,000.00 paid; and
>
> c.     A0428 (Ambulance Service, Basic Life Support, non-emergency): approximately $3.5 million billed; approximately $66,000.00 paid.

36.     Further analysis of Medicaid billing records showed that Tritan had not billed Medicaid for any wheelchair van transport codes since December 11, 2014.

37.     To determine whether Tritan's ambulance transport billings were accurate, investigators reviewed a sample of 27 of Tritan's Medicare and/or Medicaid patients.   Of the 27 patients:

> a.     20 patients were always transported by wheelchair van;
>
> b.     4 patients were always transported by ambulance; and
>
> c.     3 patients were sometimes transported by wheelchair van and sometimes by ambulance.

Even though Tritan transported at least 20 of these patients exclusively by van, it billed the transports for all 27 of the patients as ambulance transports.   Conservatively, 74.07% (20 ÷ 27) of Tritan's billings to Medicare and/or Medicaid were fraudulent.

38.     Investigators also learned that CGS, the Medicare Administrative Contractor, conducted a medical review of Tritan's dialysis related transports utilizing code A0426 for the period of July 1, 2012, through March 31, 2013.   The audit involved a randomly selected sample size of 20 transports utilizing code A0426 and revealed a 100% error rate, resulting in

overpayments totaling $4,426.68 for these transports.

39.     Following this finding, CGS issued an education letter to Tritan regarding billing practices and procedures.   The letter described, in detail, proper procedures and requirements for ambulance transports.   Further, beginning on November 5, 2013, through May 29, 2015, Tritan was subject to a pre-pay review program for dialysis transports utilizing code A0426.   The pre-pay review program required Tritan to provide supporting documentation, for all billing submissions to Medicare using code A0426, before payment would be made.

40.     Upon reviewing Tritan's Medicare billing, investigators in this case observed a significant shift in Tritan's Medicare billing habits.   In 2012 and 2013, prior to CGS's review period, Tritan's most popular and lucrative Medicare billing code was A0426.   However, after the pre-pay review program was instituted, Tritan billed Medicare using code A0428 (Basic Life Support) from 2014 through 2017.   SA Mincks observed that the shift in billing codes avoided the additional documentation requirements under the pre-pay review program.   Investigators determined that during this same time period, Tritan continued to bill Medicaid utilizing code A0426 as its Medicaid billing was not subject to pre-pay review.

41.     On January 5, 2016, AdvanceMed, Medicare's Zone Program Integrity Contractor, initiated an investigation into Tritan based on information indicating that Tritan had billed for ambulance transports to hospitals on days for which there were no corresponding hospital claims for the patients transported.   The AdvanceMed investigation indicated that Tritan did not actually transport the patient to the hospital on the days it claimed.   Following their investigation, AdvanceMed placed Tritan on a pre-pay review for the claims in question.   On November 28, 2016, AdvanceMed sent Tritan a Provider Education letter on proper billing, which was addressed to Dougherty's attention.

11

**C.    The Defendants**

42.    The investigation shows that Tritan fraudulently billed Medicare and/or Medicaid for ambulance transportation services, and as a result, the fraudulently obtained payments were deposited into Tritan's Huntington National Bank Accounts, Account No. xxxx9065 ("HNB 9065") between January 1, 2013, and November 30, 2015, and Account No. xxxx5169 ("HNB 5169") between December 1, 2015, and April 30, 2017 (collectively "main HNB accounts"). Dougherty and Green exercised control over these accounts.

43.    Tritan transitioned their primary account at Huntington National Bank from HNB 9065 to HNB 5169 beginning in September 2015.    During this transition, payments were deposited into either account.    However, beginning in December 2015, Medicare and Medicaid payments for Tritan were deposited exclusively into HNB 5169.

44.    Between January 1, 2013, and April 30, 2017, deposits into HNB 9065 and HNB 5169 totaled $10,029,641.70.    As previously stated, the total amount paid to Tritan during that time by Medicare Part B was $4,747,556.45.    The total amount paid by Medicaid during that same period conservatively was $1 million.    Therefore, the total amount Tritan received during that period from Medicare and Medicaid billings was approximately $5,747,556.45.

45.    The sample reviewed by investigators in this case shows that at least 74.07% of Tritan's billings to Medicare and Medicaid were based on fraudulent billings.    (*See* ¶ 37.)    By extrapolation, no less than $4,257,215.06 of the payments that Tritan obtained from Medicare and Medicaid ($5,747,556.45 x 74.07%) resulted from Tritan's fraudulent billing.    These fraudulently obtained payments were deposited directly into Tritan's main HNB accounts.

46.    Once in the main HNB accounts, Dougherty or Green caused Tritan's fraud proceeds to be transferred by monetary transactions greater than $10,000.00 into other accounts as

12

further described below.

47.     At least $340,000.00 in fraud proceeds was transferred into PNC Bank, N.A. Money

Market Account No. xxxx2353 ("PNC 2353") through the following transactions:

| PNC 2353 | | |
|---|---|---|
| **Date of Deposit** | **Amount of Deposit** | **Source of Deposit** |
| June 20, 2013 | $140,000.00 | HNB 9065 |
| February 1, 2016 | $100,000.00 | HNB 5169 |
| November 29, 2016 | $100,000.00 | HNB 5169 |

A subsequent transfer of $40,000.00 to PNC, Bank, N.A. Account ending in 9249 on February 2,

2017, reduced the amount of fraud proceeds that remained in PNC 2353 to $300,000.00.

48.     On or about October 31, 2017, the IRS seized $132,183.44 from PNC Bank, N.A.

Money Market Account No. xxxx2353 (Defendant 1).

49.     At least $1,170,000.00 in fraud proceeds was transferred into PNC Bank, N.A.

Money Market Account No. xxxx9249 ("PNC 9249") through the following transactions:

| PNC 9249 | | |
|---|---|---|
| **Date of Deposit** | **Amount of Deposit** | **Source of Deposit** |
| May 4, 2015 | $24,000.00 | PNC 6928 |
| July 9, 2015 | $100,000.00 | HNB 9065 |
| September 8, 2015 | $100,000.00 | HNB 9065 |
| February 1, 2016 | $152,000.00 | HNB 5169 |
| March 17, 2016 | $51,000.00 | HNB 5169 |
| April 5, 2016 | $51,000.00 | HNB 5169 |
| May 19, 2016 | $107,000.00 | HNB 5169 |
| August 15, 2016 | $150,000.00 | PNC 9255 |
| September 21, 2016 | $65,000.00 | HNB 5169 |
| November 29, 2016 | $156,000.00 | HNB 5169 |
| January 26, 2017 | $57,000.00 | HNB 5169 |
| February 2, 2017 | $40,000.00 | PNC 2353 |
| March 6, 2017 | $50,000.00 | HNB 5169 |
| April 11, 2017 | $67,000.00 | HNB5169 |

A subsequent transfer of $40,000.00 to PNC, Bank, N.A. Account ending in 9206 on March 2,

2017, reduced the amount of fraud proceeds that remained in PNC 9249 to $1,130,000.00.

50.     The source of the $24,000.00 deposit into PNC 9249 on May 4, 2015, was a $24,000.00 deposit on April 27, 2015, into PNC Bank, N.A. Account ending in 6928 from HNB 9065.  On May 4, 2015, Dougherty then transferred $30,000.00 from PNC 6928 into PNC 9249, which included the $24,000.00 from HNB 9065.

51.     The source of the $150,000.00 deposit into PNC 9249 on August 15, 2016, was a check, which Dougherty wrote for $150,000.00 on August 9, 2016, from HNB 5169 and which was deposited into PNC Bank, N.A. Account ending in 9255 (an account held by Dougherty's husband which is not directly linked to the fraud).  On August 15, 2016, the $150,000.00 was transferred from PNC Account 9255 to PNC 9249.

52.     On or about October 31, 2017, the IRS seized $1,019,076.76 from PNC Bank, N.A. Money Market Account No. xxxx9249 (Defendant 2).

53.     At least $40,000.00 in fraud proceeds was transferred into PNC Bank, N.A. Money Market Account No. xxxx9206 on March 2, 2017, from PNC 9249.  On or about October 31, 2017, the IRS seized $40,000.00 from PNC Bank, N.A. Money Market Account No. xxxx9206 (Defendant 3).

54.     At least $800,000.00 in fraud proceeds was deposited into Huntington National Bank, N.A. Money Market Account No. xxxx5035 between approximately March 25, 2016, and March 10, 2017, via eight checks, each in the amount of $100,000.00 written from HNB 5169. On or about October 31, 2017, the IRS seized $800,000.00 from Huntington National Bank, N.A. Money Market Account No. xxxx5035 (Defendant 4).

55.     At least $1,120,000.00 in fraud proceeds was transferred into JP Morgan Chase Bank, N.A., Account No. xxxx9861 ("JPMC 9861") through the following transactions:

14

| JPMC 9861 | | |
|---|---|---|
| **Date of Deposit** | **Amount of Deposit** | **Source of Deposit** |
| May 13, 2013 | $20,000.00 | JPMC 0352 |
| September 29, 2014 | $100,000.00 | HNB 9065 |
| March 2, 2015 | $100,000.00 | HNB 9065 |
| May 11, 2015 | $100,000.00 | HNB 9065 |
| May 11, 2015 | $100,000.00 | HNB 9065 |
| July 13, 2015 | $100,000.00 | HNB 9065 |
| August 26, 2015 | $100,000.00 | HNB 9065 |
| September 8, 2015 | $100,000.00 | HNB 9065 |
| October 26, 2015 | $200,000.00 | HNB 9065 |
| October 11, 2016 | $100,000.00 | HNB 5169 |
| November 21, 2016 | $100,000.00 | HNB 5169 |

56.     The source of the $20,000.00 deposit into JPMC 9861 on May 13, 2013, was a $23,000.00 deposit into JP Morgan Chase Bank N.A. Account ending in 0352 from HNB 9065. The next day, $20,000.00 of the fraud proceeds was transferred from the JP Morgan Chase Account ending in 0352 into JPMC 9861.

57.     On or about October 31, 2017, the IRS seized $644,526.18 from JP Morgan Chase Bank, N.A., Account No. xxxx9861 (Defendant 5).

58.     At least $100,000.00 in fraud proceeds was deposited into PNC Bank, N.A. Savings Account No. xxxx9214 on January 26, 2017, via a single check written from HNB 5169.   On or about October 31, 2017, the IRS seized $100,000.00 from PNC Bank, N.A. Savings Account No. xxxx9214 (Defendant 6).

59.     In total, Dougherty or Green caused the transfer of approximately $3,490,000.00 in fraud proceeds into these accounts.

60.     By reason of the facts set forth herein, the defendants are properly condemned and forfeited to the United States under 18 U.S.C. § 981(a)(1)(A) and/or (C) because the defendants constitute property involved in a monetary transaction in criminally derived property of a value greater than $10,000.00 and are derived from specified unlawful activity in violation of 18 U.S.C.

15

§ 1957(a) and/or constitute or are derived from proceeds traceable to one or more offenses constituting specified unlawful activity, said activities being false statements relating to health care matters in violation of 18 U.S.C. § 1035 and/or health care fraud in violation of 18 U.S.C. § 1347 or a conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349.

**CLAIM FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that:

(a)     pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendants and to retain the same in its custody subject to further order of the Court;

(b)     the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendants to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c)     the forfeiture of the defendants to the United States be confirmed, enforced, and ordered by the Court;

(d)     the Court thereafter order the United States to dispose of the defendants as provided by law; and

(e)     the Court award the United States all other relief to which it is entitled, including

the costs of this action.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711 / Fax (513) 684-6385
Deborah.Grimes@usdoj.gov

**VERIFICATION**

I, Shawn A. Mincks, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Internal Revenue Service, Criminal Investigation, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

3/30/18

Date

SHAWN A. MINCKS, Special Agent
Internal Revenue Service, Criminal Investigation

18

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff    Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah D. Grimes, Assistant United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202    (513) 684-3711

### DEFENDANTS
$132,183.44 from PNC Bank, N.A. Money Market Account No. xxxx2353, Held in the Names of Jeralyn R. Dougherty and Clint Green, et al.

County of Residence of First Listed Defendant    Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and/or (C)

Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
3/30/18

SIGNATURE OF ATTORNEY OF RECORD
*Deborah Grimes*

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE